UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

    v.                                                Case No. 8:14-cr-00185-T-23MAP

ALI EL KHATEEB,
ALA EDDIN M. KHALED,
GEORGE CHALLITA, and
ANWAR GABER,

    Defendants.
_____/

## REPORT AND RECOMMENDATION

Before me are Defendant Anwar Gaber's motions to suppress (docs. 189, 203) and the Government's response (doc. 206).[1] I held a hearing on the motions on March 16, 2015.[2] The issue is whether the Government's warrantless searches of two warehouses and three self-storage units in Tampa violated Gaber's Fourth Amendment rights. I find that agents obtained valid consent from the landlords to search the properties and recommend the motions be denied.[3]

---

[1] The District Judge referred these motions to me for a report and recommendation. Defendant Ali El Khateeb has joined in the motions. Background on the case is included in my earlier R&R recommending the denial of two other motions to suppress (docs. 177, 182).

[2] On March 23, 2015, the district judge stayed the case pending the Supreme Court's ruling in *McFadden v. United States*, No. 14-378 (doc. 239). That case was decided on June 18, 2015, and on June 25, 2015, the district judge vacated the stay in this case (doc. 276). I held a status conference on pending motions on August 4, 2015, during which the parties concurred that the motions to suppress are ripe for the Court's consideration.

[3] Defendants have not identified the evidence they seek to suppress, and the government has not indicated what evidence obtained from the warrantless searches, if any, it will offer at trial. The exclusionary rule speaks to excluding evidence at trial that was obtained in violation of

A.   *Legal Framework*

The Fourth Amendment guarantees: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized." U.S. Const. amend. IV. To trigger Fourth Amendment protection, a defendant must demonstrate a reasonable expectation of privacy in the place searched. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "[L]egal ownership is not a prerequisite for a legitimate expectation of privacy," *United States v. Garcia*, 741 F.2d 868, 870 (11th Cir. 1984), and the expectation of privacy for a commercial place is less than that for an individual's home. *Carter*, 525 U.S. at 88.

Once a defendant establishes a reasonable expectation of privacy, "[t]he basic premise of search and seizure doctrine is that searches undertaken without a warrant issued upon probable cause are 'per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.'" *United States v. Alexander*, 835 F.2d 1406, 1408 (11th Cir. 1988) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). One of the exceptions is a search conducted pursuant to consent. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973). If the consent is voluntary and came from someone authorized to give it, it is valid. *United States v. Matlock*, 415 U.S. 164, 172 n. 7 (1974). Ordinarily, anyone with common authority over the place or effects to be searched can give valid consent. *Id.* at 171. A third party must have control or mutual

---

a defendant's Fourth, Fifth, or Sixth Amendment rights. If the government does not intend to introduce any evidence from the searches at trial, the motions are moot. But without any certainty about which evidence the government will introduce, the Court assumes it will offer evidence from the searches.

use of property, not mere access to an area, to give consent. *Lenz v. Winvurn*, 51 F.3d 1540, 1549 (11th Cir. 1995).

While it is true generally that a landlord may not consent to a search of a tenant's leased property, *see Chapman v. United States*, 365 U.S. 610, 616-17 (1961), it is also true that when a person voluntarily abandons property, he no longer has an objectively reasonable expectation of privacy in the property. *See United States v. Cofield*, 272 F.3d 1303, 1305 (11th Cir. 2001). When a leased property is abandoned, authority to consent to a search reverts to the landlord. *See United States v. Mercer*, 541 F.3d 1070, 1074 (11th Cir. 2008); *United States v. Brazel*, 102 F.3d 1120, 1148 (11th Cir. 1997). The government has the burden of showing abandonment of the premises. *United States v. Ramos*, 12 F.3d 1019, 1023 (11th Cir. 1994).

The government also bears the burden of proving its agents had valid consent. *See Coolidge v. New Hampshire*, 403 U.S. 443, 455 (1971). The standard for measuring the extent of an individual's consent under the Fourth Amendment is that of "objective" reasonableness – would the facts available to the officer at the moment warrant a man of reasonable caution in the belief that the consenting party had authority over the premises? *Illinois v. Rodriguez*, 497 U.S. 177, 188-189 (1990). What would the typical reasonable person have understood by the exchange between the officer and the individual searched? *See Florida v. Jimeno,* 500 U.S. 248, 251 (1991).

B.   *Discussion*

   1.   *Storage Units*

Wayne Faison, Sentry Self-Storage's property manager, testified that between May and July 2013, Defendant Gaber leased three storage units from Sentry on a month-to-month basis. Gov't Exhs. 3-5. In September 2013, Gaber stopped paying rent. Gov't Ex. 7. Faison called Gaber weekly

for a time in an attempt to collect rent, but Gaber never answered. Sentry also posted delinquency notices at the units beginning on September 6, 2013. In November 2013, Sentry published a "Notice of Public Sale" and posted the notice on its main office door. *See* Gov't Ex. 3-5. The notice explained that Sentry planned to sell the units' contents at an auction the following month.

Around that time, Mike McClung, Senior Inspector for the United States Marshal's Service, visited Sentry. Faison told McClung about Gaber's default, the impending public sale, and Sentry's plans to enter the units to inventory them beforehand (standard procedure for Sentry). Faison agreed to inform McClung before he entered the units.

McClung testified that in early December 2013, he, DEA Special Agent Justin Duralia, and local law enforcement met Sentry employees at the units. When they arrived, Sentry had already opened the locks (which the tenant had provided and to which Sentry did not have a key) with bolt cutters. With Sentry's consent, agents entered and searched the three units. One was empty; the other two had debris strewn throughout, including packaging material, plastic bins, garbage bags, boxes, some synthetic marijuana, and shipping labels. *See* Def. Exhs. 4B-C, 5B-E, 6B-D. Law enforcement seized items and photographed the scene.

Under these circumstances there is no Fourth Amendment violation for two stand-alone reasons. First, Sentry (through Faison) had authority to consent to the search. Pursuant to the lease and Florida law, Sentry had the right to enter the units, inventory them, and sell property stored inside to pay Gaber's unpaid balance.[4] *See United States v. Smith*, 353 F. App'x 229, 230-31 (11th

---

[4] Under the lease and Florida law, Sentry had a lien "upon all personal property, whether or not owned by the tenant, located . . . in a self-contained storage unit for rent . . . in relation to the personal property and for . . . expenses reasonably incurred in its sale or other disposition . . . ." Fla. Stat. § 83.805; *see also* Gov't Ex. 3 at ¶ 4. If a tenant defaults on rent, Sentry may deny the tenant access to his property stored in the unit and, after proper notice, enforce its lien by

Cir. 2009) (finding landlord had actual authority to consent to search of storage unit because water was seeping from the unit and lessee had contractually agreed to allow landlord to enter in emergencies). When Gaber did not respond to Sentry's efforts to contact him about past due rent, Sentry initiated efforts to sell the personal property left behind. The condition of the units provides additional proof that Gaber (or any individual associated with him) did not intend to return. Second, and perhaps more compelling, under these circumstances, agents reasonably and in good faith relied on Sentry's assertions that (1) Gaber was in default and (2) it was exercising its right to enter the units. *See Illinois v. Rodriguez*, 497 U.S. 177 (1990). Indeed, agents observed the notice of public sale at Sentry's office during their first meeting with Faison. For these reasons, I recommend that the motion to suppress (doc. 203) be denied.

    2.    *Warehouses*

Gaber claims he is a part owner and employee of non-party B&B Distributors (Defendant Khateeb is apparently the principal owner). Non-party Pelal Deeb[5] (according to Gaber, an agent of B&B) leased the warehouses on behalf of Wholesale and More, LLC. Gov't Exhs. 1-2. The parties have not explained the connection between Deeb and Wholesale and More to either B&B or Gaber.[6]

---

selling the tenant's property. Fla. Stat. §§ 83.8055, 83.806.

    [5] Gaber refers to the B& B agent as Pelal Deeb. On the leases, however, he is listed as both "Penal Deeb" (40th Street warehouse) and "Penal Deep" (38th Street warehouse).

    [6] Because the government does not directly challenge Gaber's standing, the Court presumes he has a Fourth Amendment right worthy of protection. *United States v. Kapperman*, 764 F.2d 786, 791 n.6 (11th Cir. 1985) (because the government failed to raise the question, the court need not address standing). Having said that, Gaber's standing is questionable: not only does he not substantiate his ownership interest in B&B, the warehouses were leased to a separate entity and individual. I also doubt Gaber's standing to assert B&B's rights. "'When corporate

Instead, Gaber contends he had a reasonable expectation of privacy in the contents of the warehouses, because (1) he was part-owner of B&B Distributors; (2) he had personal and business papers stored there; (3) the warehouses were not open to the public; and (4) the warehouses were locked, and neither the landlord nor the property manager had keys. The Government, on the other hand, argues that the warehouses were abandoned.

Scott Fowler of A.L. Commercial Real Estate, the property manager for the warehouses, testified that he got a text from "Fred," his tenant contact, that the business was relocating and no longer needed the warehouse space.[7] Fowler did not collect rent payments – that was the owner Arnold Kincaid's responsibility – but he thinks rent was current on the warehouses when he received "Fred's" text, and the lease term had not expired. Nonetheless, when a tenant indicates to the landlord it has vacated the premises, standard procedure is to enter the warehouse to clean and repair it for re-leasing. Fowler contacted Kincaid about the text. Kincaid advised Fowler to re-lease the units.

Sometime after Fowler got "Fred's" text, McClung visited Fowler's office. Fowler explained that the tenant had vacated and he planned to release the warehouses. At McClung's request (and

---

property is seized or searched, an individual cannot assert the corporation's Fourth Amendment rights absent a showing that he had an independent privacy interest in the goods seized or the area searched.'" *United States v. Sotolongo*, No. 6:13-cr-99-Orl-37KRS, 2014 WL 793318, at *2 (M.D. Fla. Feb. 27, 2014) (quoting *United States v. Vicknair*, 610 F.2d 372, 379 (5th Cir. 1980)). Although McClung testified some of the paperwork found at the warehouses bore Gaber's name, there is no evidence these were anything other than documents belonging to the corporation. El Khateeb provides even less information as to his individual standing to challenge the searches.

[7] The record is not clear regarding whether the business operating out of the warehouse was Wholesale and More, B&B, or some other entity.

with Kincaid's permission), Fowler agreed to tell McClung before he entered the warehouses, which he did about a week later. On the day of the search, Fowler and McClung entered the 38th Street warehouse through a side door that was left unlocked. Fowler used a screwdriver to pry open the lock of the 40th Street warehouse. Inside, trash and debris were strewn around, drywall was damaged, and one of the restrooms was in disrepair. Def. Exhs. 1B-1E; 2B-2E. According to Fowler, there was no sign of ongoing business activities. Fowler testified that he permitted McClung to search the warehouses, and he did not feel pressure to consent. McClung, for his part, testified there was paperwork, shipping labels, empty packages, and packaged product littered around the warehouses. Photographs agents took of the inside of the warehouses confirm this. *See id.*

Putting the question of standing aside (*see* footnote 6, *supra*), I find there is sufficient evidence of abandonment or, put differently, a surrender of any legitimate expectation of privacy that Gaber may have had as to the warehouses' contents. I make this finding even though the search occurred prior to the expiration of the lease. Fowler testified that his tenant contact told him it had relocated and no longer needed the leased space. A side door to one of the warehouses was left unlocked. When Fowler entered the warehouses, open cardboard boxes, empty containers, torn up packaging, and trash was strewn about the premises. Photographs confirm this. That one of the warehouses was unlocked (the 38th St. warehouse) and both appear to have been ransacked is sufficient evidence that Gaber (assuming he even has standing, which I doubt) lacked any legitimate expectation of privacy in the warehouses.

What is more, as with the storage units, McClung reasonably believed that the landlord had authority to consent to the search. *See Illinois v. Rodriguez*, 497 U.S. at 177 ("Whether the basis for such authority exists is the sort of recurring factual question to which law enforcement officials must

be expected to apply their judgment; and all the Fourth Amendment requires is that they answer it reasonably."). Fowler, the owner's agent, told McClung that his tenant contact communicated to him that it had relocated and was no longer using the space. He informed McClung that he intended to clean out the warehouses to and re-lease them. Fowler had the owner's approval for this course of action as well as for his communications with McClung. Under these circumstances, McClung had a reasonable belief that Fowler had authority to consent to the search of the warehouses. *See Paige*, 543 F. App'x at 221-22. The motion to suppress (doc. 189) should be denied.

C.      Conclusion

For the reasons stated, I recommend the motions to suppress (docs. 189 and 203) be DENIED.

IT IS SO REPORTED at Tampa, Florida on August 4, 2015.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal. 28 U.S.C. § 636(b)(1).


cc:     Hon. Steven D. Merryday
        Counsel of Record